**STATE of Iowa, Appellee,**

v.

**Thomas J. BREITBACH, Appellant.**

No. 91–322.

Supreme Court of Iowa.

June 17, 1992.

Linda Del Gallo, State Appellate Defender, and Andi S. Lipman, Asst. State Appellate Defender, for appellant.

Bonnie J. Campbell, Atty. Gen., Thomas G. Fisher, Jr., Asst. Atty. Gen., Fred H. McCaw, County Atty., and Timothy J. Gallagher, Asst. County Atty., for appellee.

Considered by SCHULTZ, P.J., and LAVORATO, NEUMAN, SNELL and ANDREASEN, JJ.

SNELL, Justice.

Appellant, Thomas J. Breitbach, appeals his conviction of escape in violation of Iowa Code section 719.4(1) (1989). Breitbach challenges his conviction on the basis of three asserted errors. First, he contends that defense counsel's failure to move for a judgment of acquittal at the close of the State's evidence denied him effective assistance of counsel. Second, he maintains that he was denied effective assistance of counsel in that his attorney failed to move for a mistrial in response to two items of State's evidence that were ultimately determined to be inadmissible. Finally, Breitbach argues that the jury instructions were deficient in two respects. Because we find no merit in any of Breitbach's three claims, we now affirm his conviction.

I. *Background Facts.*

On September 12, 1990, officers went to the residence of Breitbach's girlfriend, Melissa Kramer, and left a message for Breitbach, which requested him to contact them. After receiving the message, Breitbach contacted officer Michael Chapman, who indicated that he wished to speak with Breitbach and requested that he stop at the police station. Breitbach responded that he was "busy" but invited the officers to come to Kramer's residence for the requested discussion.

That same evening, officer Chapman and two other plainclothed officers went to Kramer's residence with a warrant for Breitbach's arrest. The warrant charged Breitbach with delivery of cocaine. Upon arriving, the officers knocked on the door, identified themselves, and requested to speak with Breitbach. Breitbach came to the door, apparently just having taken a shower since he was clothed only in a pair of shorts and his hair was wet. The officers testified that they told Breitbach that they had a warrant for his arrest for delivery of cocaine and that he would have to come with them. The officers also indicated that at this time they showed Breitbach their identification.

As they stood on Kramer's front porch, Breitbach asked officer Chapman for permission to go inside and speak with his girlfriend. In response, officer Chapman said "go in and talk to her." As officer Chapman turned to reenter Kramer's apartment, Breitbach jumped off the porch and bolted past the two other officers.

The officers searched the neighborhood unsuccessfully. Breitbach was later apprehended. He was tried, convicted, and sentenced to a term of imprisonment not to exceed five years for violating Iowa Code section 719.4(1), which reads in pertinent part as follows:

> A person ... arrested for the commission of a felony, who intentionally escapes from ... the custody of any public officer or employee to whom the person has been entrusted, commits a class "D" felony.

II. *Failure to Move for a Judgment of Acquittal.*

Breitbach first contends that he was denied effective assistance of counsel, in violation of the Sixth and Fourteenth Amendments, when his trial counsel failed to move for a judgment of acquittal at the close of the State's evidence. Our standard of review for ineffective-assistance-of-

counsel claims is de novo. *Polly v. State,* 355 N.W.2d 849, 854 (Iowa 1984).

To sustain a claim of ineffective assistance of counsel, Breitbach must show that "(1) counsel failed to perform an essential duty, and (2) prejudice resulted therefrom." *Taylor v. State,* 352 N.W.2d 683, 685 (Iowa 1984). Breitbach has the burden of proving both of these elements by a preponderance of the evidence. *Id.* In determining whether defense counsel failed to perform an essential duty, "[t]he ultimate test is whether under the entire record and totality of the circumstances, counsel's performance was within the range of normal competency." *Id.* In evaluating the second prong of a claim of ineffective assistance of counsel, prejudice, we have required a showing that but for counsel's unprofessional errors, a reasonable probability of acquittal existed. *Id.* Finally, to the extent we conclude that Breitbach has suffered no prejudice, we need not pass on the question of counsel's competency. *Strickland v. Washington,* 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674, 699 (1984) ("If it is easier to dispose of ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

■ In determining whether a motion for judgment of acquittal would be successful, the relevant inquiry is whether the evidence presented is sufficient to sustain a conviction of the offense in question. Iowa R.Crim.P. 18(8)(a). That is, there must be presented "such evidence as could convince a rational trier of fact that the defendant is guilty of the crime charged beyond a reasonable doubt." *State v. LaPointe,* 418 N.W.2d 49, 51 (Iowa 1988). In making this determination, "[w]e must examine the evidence in the light most favorable to the verdict." *State v. Clarke,* 475 N.W.2d 193, 197 (Iowa 1991). In addition, we consider the entire record and accept all legitimate inferences therefrom to support the verdict. *State v. Dallen,* 452 N.W.2d 398, 399 (Iowa 1990).

The jury was instructed that to find Breitbach guilty of escape, the State must

prove the following three elements beyond a reasonable doubt:

1. The defendant had previously been arrested for a felony.

2. By reason of the arrest, the defendant had been placed in the custody of Michael Chapman and others, who were public officers.

3. That on or about the twelfth day of September, 1990, the defendant intentionally escaped from the custody of Michael Chapman and others, without consent or authority.

Breitbach contends that the State failed to establish that he was in custody at the time he made his departure from the officers. Breitbach maintains that the circumstances surrounding his "encounter" with the police led him to believe that he was not in custody and was thus free to leave. In support of his position, Breitbach notes that he was not physically restrained in any manner by the officers, the officers did not display any weapons, and the officers did not read him his *Miranda* rights. Breitbach argues that these circumstances, in conjunction with the fact that the officers had expressly allowed him to return to the apartment to speak with his girlfriend, engendered in him a reasonable belief that he was not then in "custody." Consequently, Breitbach contends, the State failed to adduce such evidence as would convince a rational trier of fact that he was guilty of escape, and, therefore, his trial counsel's failure to move for a judgment of acquittal was the cause of his failure to secure an acquittal.

■ The Iowa Criminal Code, chapter 804, defines an arrest as "the taking of a person *into custody* when and in the manner authorized by law, including restraint of the person or the person's submission to custody." Iowa Code § 804.5. Custody is thus predicated upon effecting an arrest in the manner authorized by law. *See State v. Eads,* 234 N.W.2d 108, 111 (Iowa 1975) ("custody begins when an arrest is made and continues until the defendant is lawfully discharged"); *State v. Schmitt,* 290 N.W.2d 24, 28 (Iowa 1980); 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law*

*and Procedure* § 426, at 109 (1992 Supp.). Iowa Code section 804.14 elaborates upon the proper manner for making an arrest:

> The person making the arrest must inform the person to be arrested of the intention to arrest the person, the reason for arrest, and that the person making the arrest is a peace officer, if such be the case, and require the person being arrested to submit to the person's custody. . . .

█ In the instant case, the officer's testimony indicated that they scrupulously abided by the protocol for making an arrest that is outlined in Iowa Code section 804.-14. As such, the trier of fact had ample evidence on which to conclude that Breitbach was in police custody notwithstanding his impression to the contrary. The issue of custody turns on the officer's adherence to the protocol outlined in section 804.14, not the arrestee's subjective interpretation of the event. *Cf. State v. Johnson–Hugi,* 484 N.W.2d 599, 600 (Iowa 1992) (arrest for purposes of Iowa Rule of Criminal Procedure 27(2)(a) turns exclusively on compliance with section 804.14). A motion for a judgment of acquittal, had it been made, would, therefore, have properly been denied. Since Breitbach has failed to establish that but for his trial counsel's failure to move for a judgment of acquittal he would have had a reasonable possibility of acquittal, his claim of ineffective assistance of counsel on this ground must fail.

### III. *Failure to Request a Mistrial.*

Breitbach next contends that his trial counsel neglected to perform an essential duty, in derogation of his Sixth Amendment right to assistance of counsel, when he failed to request a mistrial after two of the arresting officers testified concerning their belief that Breitbach was "in custody" prior to his departure.

At trial, the following colloquy ensued between counsel for the State and officer Chapman, one of the arresting officers:

> Question: And after you told the defendant that he was under arrest and told him what he was under arrest for, you asked him to step outside?

> Answer: Yes.
> Question: And did he submit to that authority?
> Answer: Yes. He came with us.
> Question: Okay. So he was in your custody at that point?
> Answer: Yes, he was.

Similarly, another of the arresting officers, Thomas Fessler, was asked the following:

> Question: After the defendant was told that there was a warrant for his arrest and that he would have to come with the police, was the defendant in custody?

Officer Fessler responded in the affirmative to this question.

Defense counsel made timely objections to each of these exchanges on the ground that they called for a "legal conclusion." Although the first objection was overruled, the district court sustained the second objection, stating:

> I'm going to sustain the objection, and the similar objection that was made in regard to officer Chapman's testimony, which I should have sustained, and you should consider it sustained. Custody is a matter that will be submitted to you and is a term that relates to the issue of whether or not there was an arrest in this case. The objection is sustained.

█ Breitbach now argues that this cautionary instruction by the court was insufficient to dissipate the taint that arose as a consequence of the officers' testimony. Consequently, Breitbach maintains that trial counsel should have moved for a mistrial, and, had such a motion been made, there was a reasonable probability that the result of his trial would have been different.

As an initial matter, we note that the testimony above is inadmissible because it invades the province of the jury. That is,

> [w]hen a standard, or a measure, or a capacity has been fixed by law, no witness whether expert or nonexpert, nor however qualified, is permitted to express an opinion as to whether or not the person or the conduct, in question, measures up to that standard. On that question the court must instruct the jury as

to the law, and the jury must draw its own conclusion from the evidence.

*Grismore v. Consolidated Products Co.*, 232 Iowa 328, 361, 5 N.W.2d 646, 663 (1942); *see also State v. Nimmo*, 247 N.W.2d 228, 230 (Iowa 1976) (opinion testimony regarding defendant's intent to deliver controlled substances is improper); *State v. Ogg*, 243 N.W.2d 620, 621 (Iowa 1976) (opinion evidence concerning defendant's "guilt on one of the essential elements of crime" is improper); *State v. Maurer*, 409 N.W.2d 196, 197–98 (Iowa App.1987) (opinion testimony regarding ultimate fact of accused's guilt or innocence is not permitted). Since "custody" is a standard fixed by law and a matter upon which the jury will ultimately have to draw its own conclusion, conclusory expert testimony on this matter is not admissible. *Cf.* Iowa R.Evid. 704 (opinion testimony otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by trier of fact).

However, this is not to say that a cautionary statement to the jury asking them to disregard the officer's testimony concerning custody will not suffice to mitigate the prejudice that would otherwise arise. On the contrary, cautionary instructions are sufficient in all but the most extreme cases. *State v. Belieu*, 288 N.W.2d 895, 901 (Iowa 1980); *State v. Jensen*, 216 N.W.2d 369, 374 (Iowa 1974); *see also Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476, 484 (1968) ("not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions"); *United States v. Kilcullen*, 546 F.2d 435, 437 (1st Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977) (noting "strong presumption" that appropriate limiting instructions will reduce potential prejudice). In short, "[a] defendant is entitled to a fair trial but not a perfect one." *Bruton*, 391 U.S. at 135, 88 S.Ct. at 1627, 20 L.Ed.2d at 484.

■ In *Belieu*, we identified a number of considerations that are important in determining whether the prejudicial impact of inadmissible evidence can be adequately mitigated by the use of a cautionary instruction. 288 N.W.2d at 895. We noted that the degree to which the defendant is able to protect himself against the prejudicial impact is a highly relevant consideration. *Id.* at 901 (concluding that where codefendants in a joint trial testify as to defendant's prior criminal activity, "no way existed for defendant to combat the evidence without compounding the prejudice"); *see also Bruton*, 391 U.S. at 136, 88 S.Ct. at 1628, 20 L.Ed.2d at 485 (holding that cautionary instructions were insufficient to shield defendant from prejudice of codefendant's confession due to inability to cross-examine the nontestifying codefendant). Another important factor is the extensiveness of the challenged testimony and the promptness with which it is stricken from the record. *Belieu*, 288 N.W.2d at 901. Finally, to the extent that the State's evidence on the matter in question is strong, the prejudicial effect of the challenged testimony will be correspondingly less, and, therefore, a cautionary instruction will suffice to insure the defendant receives a fair trial. *Id.*

Applying these considerations to the case at hand, we conclude that the cautionary instruction given by the court was sufficient to redress any prejudice to Breitbach that might otherwise have arisen as a consequence of the officers' testimony. First, Breitbach was free to adduce any circumstantial facts that might lend support to his contention that he was not in custody as of the time he left the officers. Moreover, Breitbach was free to crossexamine any of the arresting officers as to their version of the events. Second, we note that the challenged testimony was rather brief in duration and promptly followed by an appropriate cautionary instruction. Finally, we think it important that the State's evidence, as detailed under subdivision two, on the subject of custody is quite strong. As a consequence, we are unable to conclude that the cautionary instruction given was insufficient to remedy any prejudice that might have otherwise arisen. Accordingly, Breitbach was not entitled to a mistrial on the basis of the challenged testimony and

thus cannot claim prejudice as a result of counsel's failure to so move.

## IV. *Jury Instructions.*

Breitbach's final contention is that he was entitled to two additional jury instructions beyond those that were actually given. Breitbach's suggested instructions read as follows:

    1. Actual custody refers to physical restraint, meaning detention, confinement or imprisonment.

    2. In order for there to be an unauthorized departure from physical restraint, a danger of injury to persons or property must exist. If the State has failed to prove an unauthorized departure from physical restraint, the defendant is not guilty.

Our review of this matter is for errors of law. Iowa R.App.P. 4.

■ It is true that in *State v. Burtlow,* 299 N.W.2d 665 (Iowa 1980), we concluded that subsection 1 of Iowa Code section 719.4, the subsection under which Breitbach was convicted, is intended to apply to "unauthorized departures from physical restraint." *Id.* at 669; *see also Schmitt,* 290 N.W.2d at 28 (noting that "actual custody refers to physical restraint, meaning detention, confinement, or imprisonment"). *Burtlow* contrasted an escape from "physical restraint" with the conduct then in question: a failure to return to a state work-release center after a seven-day furlough. We concluded that since this latter form of escape does not give rise to "a danger of injury to persons or property," it is reasonable to conclude that the legislature intended that it would be punishable under subsection 3 of Iowa Code section 719.4, which classifies such an escape as a serious misdemeanor. *Id.* In contrast, subsection 1 escapes are categorized as a "class 'D' felony."

However, we did not mean in *Burtlow* that custody for purposes of subsection 1 must involve actual physical *contact* with the arrestee. Instead, "physical restraint," as that term is used in *Burtlow,* is necessarily involved whenever an individual either is or *would be* subjected to immediate physical restraint if an attempt to flee from the authorities was made. An arrest is clearly such a situation. In recognition of this fact, the escape statute explicitly characterizes an escape by a felony-arrestee as a subsection 1 violation. *See* Iowa Code § 719.4(1) (prohibiting intentional escape from the custody of a public officer to whom one has been entrusted as a consequence of felony arrest). By way of comparison, a failure to return from a furlough from a state work-release center does not trigger an immediate application of physical restraint and is thus more accurately characterized as an escape from constructive custody, punishable under subsection 3. *Burtlow,* 299 N.W.2d at 669; 4 J. Yeager & R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 428, at 110 (1979) ("[Subsection 3] can apply to trustees, persons on work-release programs, and the like, who are not being held physically in confinement and whose actions do not constitute a breach of any physical restraint, but violate the limited conditions upon which they have been granted a limited liberty.").

■ Anytime an individual escapes from physical restraint, a "danger of injury to persons or property" will necessarily arise. *Burtlow,* 299 N.W.2d at 669. It thus follows that a fleeing felony-arrestee will pose a danger of injury to persons or property. Nevertheless, this language from *Burtlow* does not create a requirement that the State demonstrate that an arrestee's unauthorized departure will give rise to "a danger of injury to persons or property" when seeking a conviction under Iowa Code section 719.4(1). Instead, this risk-of-injury language highlights the legislature's categorizing escapes under subsection 1 of section 719.4—*i.e.,* those involving escape from physical restraint—as more serious than escapes under subsection 3—*i.e.,* those involving escape from constructive custody.

Since an arrest situation will necessarily involve either actual physical restraint or the immediate threat thereof should the suspect attempt to flee, any additional instruction to the jury requiring a showing of

physical restraint would be superfluous. The instructions as given were consistent with *Burtlow* as well as the statutory language of section 719.4.

Having found no merit in any of Breitbach's three asserted errors, we affirm his conviction.

AFFIRMED.