**STATE of Iowa, Appellee,**

v.

**James Harold SMITH, Appellant.**

**No. 03–1663.**

Supreme Court of Iowa.

Dec. 17, 2004.

Linda Del Gallo, State Appellate Defender, and Patricia Reynolds, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Richard J. Bennett, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Sue Swan, Assistant County Attorney, for appellee.

LARSON, Justice.

The principal issue in this case is whether the defendant "escaped" under Iowa Code section 719.4(1) (2003) when he left the courthouse after sentencing in an earlier case and failed to appear at the sheriff's office as ordered by the court. The district court found the defendant guilty, and we affirm.

### I. *Facts and Prior Proceedings.*

In a case that preceded the present escape case, James Smith was sentenced to prison for third-offense OWI, a felony. The sentencing court advised Smith, "you are to be committed to the custody of the director of the State Department of Corrections." The court continued:

> I have ordered that you are to be directly transported by the Black Hawk County Sheriff to the Iowa Medical and Classification Center to serve the ... prison sentences imposed by the court. I will order that you are to immediately surrender yourself to the Black Hawk County Sheriff following this hearing.

Then the judge addressed Smith's defense counsel: "Mr. Fiester, I'll ask that you surrender your client to the Black Hawk County Sheriff and inform the sheriff that the order will be coming forthwith." Counsel responded, "We'll walk over."

After the hearing, Smith made several phone calls from a courthouse pay phone. After ten or fifteen minutes, his lawyer realized he was scheduled for another hearing. He explained the situation to a court attendant and asked her to call a deputy sheriff to escort Smith to jail. The lawyer left. Once alone, Smith fled the courthouse and did not return.

Smith was charged with escape under Iowa Code section 719.4, which provides:

> 1. A person convicted of a felony, or charged with or arrested for the commission of a felony, who intentionally escapes, or attempts to escape, from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction, charge, or arrest, or from the custody of any public officer, public employee, or any other person to whom the person has been entrusted, commits a class "D" felony.

Subsections 2, 3, and 4 of section 719.4 define other types of escape, but those provisions are not relevant here.

The defendant argues the evidence was insufficient to support a finding of escape under section 719.4(1), and the sentencing court in the OWI offense abused its discretion by requesting the defendant's attorney to escort the defendant to the sheriff's office.

### II. *Application of the Escape Statute.*

A conviction under section 719.4(1) requires proof that (1) the defendant had been convicted of a felony, and (2) he "intentionally escape[d]" from an "institution to which the person has been committed" or "from the custody of any public officer, public employee, or any other person to whom the person has been entrusted." Iowa Code § 719.4(1); *accord State v. Wagner*, 596 N.W.2d 83, 86 (Iowa 1999). The district court ruled that Smith violated the statute on two grounds: he escaped after being committed to the State Depart-

ment of Corrections, and he had escaped from the custody of the Black Hawk County Sheriff "and/or" the defendant's attorney, "who were public officers or employees" under the statute.

In *State v. Breitbach*, 488 N.W.2d 444 (Iowa 1992), we construed the custody requirement of section 719.4(1) as it had evolved through the legislative process and our earlier cases, including *State v. Burtlow*, 299 N.W.2d 665 (Iowa 1980). *Breitbach*, 488 N.W.2d at 449–50. In *Burtlow* the defendant was charged with violating section 719.4(1) because he had failed to return from work release. We held that, while this would have been a violation of subsection 3 of section 719.4, it was not a violation of subsection 1. *Burtlow*, 299 N.W.2d at 669. In reversing Burtlow's conviction, we said:

> We believe subsection one [the subsection charged in Smith's case] is intended to apply [to] unauthorized departures from *physical restraint.* In those cases a danger of injury to persons or property exists. When the offense is a mere failure to return from an authorized release, no such danger exists. It is reasonable to conclude the legislature intended to punish breaches of physical restraint more severely.

*Id.* (emphasis added). Smith seizes on the "physical restraint" language of *Burtlow* to argue that he was not in custody because he was not physically restrained in the sense he had been handcuffed or otherwise incapacitated or confined.

In *Breitbach* we clarified the "physical restraint" language of *Burtlow*, saying:

> [W]e did not mean in *Burtlow* that custody for purposes of subsection 1 must involve actual physical *contact* with the arrestee. Instead, "physical restraint," as that term is used in *Burtlow*, is necessarily involved whenever an individual either is or *would be* subjected to immediate physical restraint if an attempt to flee from the authorities was made. An arrest is clearly such a situation. In recognition of this fact, the escape statute explicitly characterizes an escape by a felony-arrestee as a subsection 1 violation.

*Breitbach*, 488 N.W.2d at 449.

In *Breitbach* officers went to the home of Breitbach's girlfriend, where they attempted to serve an arrest warrant on him. *Id.* at 445. The officers waited outside the house while Breitbach went inside to talk to his girlfriend. Breitbach suddenly came out of the house, jumped off the porch, and fled. *Id.* We held that, under the test set out above, Breitbach was in custody because he was subject to immediate physical restraint by fleeing from the officers. *Id.* at 449–50. Smith now argues that he was not physically restrained at the time he bolted, and under *Breitbach*, "immediate physical restraint" is required. This is a misreading of *Breitbach*. In that case, we said custody is established if the individual "is or *would be* subjected to immediate physical restraint if an attempt to flee from the authorities was made." *Id.* at 449. This is consistent with *State v. Eads*, 234 N.W.2d 108, 111 (Iowa 1975), in which we said "[c]ustody begins when an arrest is made and continues until the defendant is lawfully discharged."

Under Smith's argument, he could have fled during the sentencing hearing itself without being guilty of escape because he was not "physically restrained" in the narrow sense he advocates. The court's order, however, ordered Smith to report to the sheriff, a "public officer" "to whom the person has been entrusted." Smith would have been subject to immediate physical restraint at the time he fled, and therefore,

for purposes of the escape statute, he was in custody under the *Breitbach* test.

### III. *The Abuse of Discretion Argument.*

■ Smith's second argument surely must be tongue-in-cheek. He argues that the district court, in the earlier OWI case, had abused its discretion by allowing Smith to be accompanied from the courthouse by his lawyer, and this somehow justified his escape. He argues the temptation to bolt was just too great; "the flesh is weak and in this circumstance, without the presence of a deputy, who ... would not take advantage of the opportunity to quietly and peacefully leave?"

■ This argument suffers from two major defects: first, the decision to flee was Smith's, not his attorney's or the court's. Any connection between the court's actions and Smith's flight is tenuous at best. Second, the earlier OWI sentencing was purely collateral to his present case, and any challenge to the court's exercise of discretion in the earlier case may not be raised in this one. We reject Smith's abuse-of-discretion argument.

**AFFIRMED.**