# IN THE COURT OF APPEALS OF IOWA

No. 13-1784
Filed July 16, 2014

**STATE OF IOWA,**
    Plaintiff-Appellant,

**vs.**

**ALEXANDER M. OPONSKI-SIMS,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert J. Blink (plea) and Douglas F. Staskal (sentencing), Judges.


A defendant challenges his counsel's performance in failing to ensure a factual basis existed on the record for his guilty plea to felony escape. **JUDGMENT REVERSED, SENTENCE VACATED, AND CASE REMANDED WITH DIRECTIONS.**

Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Alexandra Link, Assistant Attorney General, John P. Sarcone, County Attorney, and Olu Salami and Brendan Greiner, Assistant County Attorneys, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Alexander Oponski-Sims alleges he did not receive effective assistance of counsel in connection with his guilty plea because his attorney allowed him to plead guilty to felony escape under Iowa Code section 719.4(1) (2013), when the factual basis revealed in his colloquy with the court and the minutes of testimony satisfied only the absence-from-custody elements of Iowa Code section 719.4(3).

We cannot tell from the guilty plea record if Oponski-Sims's act of walking away from the Fort Des Moines Correctional Facility could be charged as an intentional escape or only as absence from custody. Therefore, we vacate his sentence and remand for further proceedings.

I.      **Background Facts and Proceedings**

Oponski-Sims received a sentence of probation following his conviction for the felony offense of burglary in the third degree. As a condition of his probation, the Fifth Judicial District Department of Correctional Services (DCS) placed him at the Fort Des Moines Community Corrections Complex. He entered the facility on November 12, 2012. On May 16, 2013, the staff reported to the Polk County Sheriff that he was missing from the facility.

On June 26, 2013, the State charged him with escape in violation of Iowa Code section 719.4(1). Oponski-Sims appeared for a guilty plea hearing on August 26, 2013. He confirmed at the hearing that he had read the minutes of testimony. In the minutes, the State set out the expected testimony of the manager and residential officers at the Fort Des Moines facility. The State's witnesses planned to testify that when Oponski-Sims entered the facility, he

received an orientation covering the regulations governing the work release program. Oponski-Sims signed a "client agreement" indicating his willingness to abide by the rules of the program. Neither the DCS rules nor the client agreement was attached to the minutes.

The State's witnesses also were expected to testify that at approximately 5:00 p.m. on May 16, 2013, the staff conducted a routine round of the facility and could not find Oponski-Sims. They conducted a "lockdown count" at 5:15 p.m. and determined he had left the facility. At 5:50 p.m., the staff notified the sheriff's department of a "walk away" from the facility. Oponski-Sims was at large for three weeks before law enforcement arrested him.

When asked by the plea-taking court what he did that made him guilty of this crime, Oponski-Sims replied: "On May 16, I walked out the back door of Fort Des Moines and did not return." The court confirmed that Oponski-Sims was sentenced to the facility as a condition of his probation and was locked in the facility at night. The district court found a factual basis to support the guilty plea in light of Oponski-Sims's statements and the minutes which were incorporated into the plea record. The court advised Oponski-Sims of the need to file a motion in arrest of judgment before sentencing if he wished to challenge the legality of the plea. He did not do so. The court sentenced him to an indeterminate five-year prison term.

Oponski-Sims now appeals, and because he did not file a motion in arrest of judgment, he challenges his guilty plea within the framework of ineffective assistance of counsel.

## II.    Standard of Review/Legal Principles for Attacking Plea

Because ineffective assistance claims are grounded in the Sixth Amendment, our review is de novo. *State v. Clay,* 824 N.W.2d 488, 494 (Iowa 2012). To the extent the underlying issue involves interpretation of the escape statute, we review for correction of legal error. *State v. Wills,* 696 N.W.2d 20, 22 (Iowa 2005).

Oponski-Sims bears the burden to prove by a preponderance of evidence his plea counsel breached an essential duty and the breach resulted in prejudice. *See State v. Straw,* 709 N.W.2d 128, 133 (Iowa 2006) (citing *Strickland v. Washington,* 466 U.S. 668, 687 (1984)). If trial counsel permitted Oponski-Sims to plead guilty and to waive his right to file a motion in arrest of judgment when the record revealed no factual basis to support the guilty plea, counsel breached an essential duty.[1] *See State v. Philo,* 697 N.W.2d 481, 485 (Iowa 2005). In the absence of a factual basis, we presume prejudice. *See State v. Schminkey,* 597 N.W.2d 785, 788 (Iowa 1999). This presumption of prejudice occurs both when the defendant was charged with the wrong crime and when it is possible the State can establish a factual basis when the case is remanded. *See State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014) (remanding to give the State an opportunity to establish a factual basis for separate acts of intimidation with a dangerous weapon).

---

[1] Two justices of our supreme court have observed that this tool to examine the factual basis for guilty pleas is more akin to plain-error review than a determination counsel was incompetent. *See Rhoades v. State,* ___ N.W.2d ___, 2014 WL 2619406 (Iowa 2014) (Mansfield, J., specially concurring).

## III. Analysis

When the legislature rewrote the criminal code in 1976, it consolidated the previously separated concepts of intentional escape and voluntary absence into Iowa Code section 719.4. *State v. Miller*, 841 N.W.2d 583, 592 (Iowa 2014).

The intentional escape statute provides, in pertinent part:

> A person convicted of a felony . . . who intentionally escapes . . . from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction . . . commits a class "D" felony.

Iowa Code § 719.4(1).

The absence-from-custody provision states, in pertinent part:

> A person who has been committed to an institution under the control of the Iowa department of corrections, to a community-based correctional facility, or to a jail or correctional institution . . . who knowingly and voluntarily is absent from a place where the person is required to be, commits a serious misdemeanor.

Iowa Code § 719.4(3).

*State v. Burtlow,* 299 N.W.2d 665, 669 (Iowa 1980) discussed the difference between the two subsections:

> Subsection one of section 719.4 obviously applies when a person convicted or charged with a felony intentionally departs without authority from a detention facility or institution to which the person has been committed on the conviction or charge. This is true whether the departure is accomplished through "stealth, guile or violence." 4 J. Yeager and R. Carlson, *Iowa Practice: Criminal Law and Procedure* § 426, at 110 (1979). Subsection three of the statute obviously applies when a prisoner is absent without authority from a place he is required to be, even if he has not left the premises of the institution or detention facility. *Id.,* § 428 . . . .

The court concluded Burtlow's failure to return to a work release center following a week-long furlough fell within subsection three. *See Burtlow,* 299 N.W.2d at

669. The court opined subsection one was intended to punish "unauthorized departures from physical restraint" when a "danger of injury to persons or property exists." *See id.*

The court later clarified that "physical restraint" as used in *Burtlow* did not mean "actual physical *contact*" but the potential for contact if a person tried to flee from authorities. *State v. Breitbach,* 488 N.W.2d 444, 449 (Iowa 1992). The court found substantial evidence to support Breitbach's conviction under subsection one when he jumped off a porch and bolted past police officers who came to his girlfriend's residence with a warrant for his arrest and advised he would have to come with them. *Id.* at 445–47. The court explained the State was not required to show a defendant's unauthorized departure gave rise to a "danger of injury to persons or property" to prove a violation of subsection one. *Id.* at 449.

Recently, the supreme court summarized *Burtlow* and *Breitbach* as follows: "[A]bsence from custody can apply to persons held either in actual or constructive custody, while escape applies only to persons held in actual custody." *Miller*, 841 N.W.2d at 594. The distinction is subtle between actual custody, without actual physical contact or restraint, and constructive custody. An arrest situation is an obvious example of "actual physical restraint or immediate threat thereof." *See Breitbach*, 488 N.W.2d at 449-50; *see also State v. Smith,* 690 N.W.2d 75, 77–78 (Iowa 2004) (finding defendant was in actual custody when he fled courthouse after court ordered him to be transported by the sheriff because he was subject to immediate physical restraint). But when an

offender walks away from a residential placement, he may not be subject to immediate physical restraint under all circumstances. We distinguish between the two offenses by examining "the degree of liberty enjoyed by the offender prior to the commission of the section 719.4 violation." *See State v. Francois*, 577 N.W.2d 417, 421 (Iowa 1998).

The State relies on three unpublished cases from our court to bolster its position that leaving a residential facility or work release assignment qualifies as intentional escape. *See Ennenga v. State*, No. 10-1094, 2013 WL 3457070, at *2-3 (Iowa Ct. App. July 10, 2013); *State v. Paarmann*, No. 10-0862, 2013 WL 541631, at *2 (Iowa Ct. App. Feb. 13, 2013); *State v. Wiley*, No. 01-1458, 2002 WL 31309923, at *2-4 (Iowa Ct. App. Oct. 16, 2002). All three have stronger facts pointing to restricted liberty than we have here.

Like Oponski-Sims, Ennenga claimed no factual basis existed for his plea to intentional escape. *Ennenga v. State*, 2013 WL 3457070, at *2. The record showed Ennenga was transported to his worksite and back to the prison by authorized personnel and was supervised while working. *Id.* He was required to wear special clothing and was provided meals at the worksite. "He was not permitted to go anywhere else but to work and back." Based on that evidence, our court found Ennenga was "under physical restraint at the time he left custody, and the proper charge against him was escape under section 719.4(1)." *Id.*

In *Paarmann*, the defendant was placed at a work release center that required residents to secure permission before leaving the building. 2013 WL 541631, at *1. Without permission, Paarmann left through a fire exit in the dining

hall. *Id.* We found substantial evidence for intentional escape because he was subject to immediate physical restraint after exiting the center. *Id.* at *2.

In *Wiley*, the supervisor at a residential facility restricted the defendant to his room overnight after he illegally consumed alcohol; a few minutes later an alarm sounded indicating a security door had been opened. 2002 WL 31309923, at *1. The monitors revealed Wiley left the building; the supervisor gave chase and local police apprehended Wiley a few minutes later. *Id.* We found substantial evidence supporting Wiley's conviction for intentional escape because he was under physical restraint at the time he left the building. *Id.* at *4.

Here, the record does not show whether the Fort Des Moines facility required Oponski-Sims to obtain permission before leaving on May 16, 2013. It is not clear if he was free to leave earlier in the day and simply did not return in time for the "routine round of the facility" at 5:00 p.m. or left without consent. His admission at the plea hearing to "walking out the back door" suggests some stealth to his departure. But the minutes do not shed any light on the security of the building, nor the rules regarding residents exiting through the back door. His colloquy with the court revealed the facility was locked at night, but did not offer any information about the level of supervision during the day. The information before us is too scant to find a factual basis for the defendant's guilty plea to intentional escape.

In its appellee's brief, the State anticipated we might find the factual basis undermined by the absence of "an express acknowledgment that [Oponski-Sims] lacked authority to depart the facility" or might need "a fuller description of the

custody exerted by the facility." In which case, the State contends it should be allowed to establish a factual basis. Oponski-Sims agrees with that remedy. Because it may be possible for the State to establish a factual basis for intentional escape, we remand for that purpose.

**IV.     Disposition**

We vacate the five-year sentence and remand the case to the district court to allow the State to supplement the record to establish Oponski-Sims was subject to immediate physical restraint at the time he left the Fort Des Moines facility. If the State is able to establish a factual basis for intentional escape, then his felony conviction will be reinstated. If the State cannot establish a factual basis for felony escape, then the plea must be set aside, and the State may proceed against Oponski-Sims for the misdemeanor offense of absence from custody.

**JUDGMENT REVERSED, SENTENCE VACATED, AND CASE REMANDED WITH DIRECTIONS.**