# IN THE COURT OF APPEALS OF IOWA

No. 17-1039
Filed May 2, 2018

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JOSHUA COOK,**
    Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, Stuart P. Werling,

Judge.

Joshua Cook appeals from his conviction for escape from custody.

**AFFIRMED.**

Zeke R. McCartney of Reynolds & Kenline, L.L.P., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Zachary Miller, Assistant Attorney

General, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Joshua Cook appeals from his conviction following a bench trial for escape from custody, a class "D" felony, in violation of Iowa Code section 719.4(1) (2016). Cook contends there is insufficient evidence to show he "intentionally escape[d], . . . from a . . . community-based correctional facility." Iowa Code § 719.4(1). Cook argues instead he should have been prosecuted for absence from custody under section 719.4(3).[1] Because we conclude substantial evidence supports Cook's conviction, we affirm.

In 2016, after being convicted for sponsoring a gathering where controlled substances were unlawfully used,[2] Cook was sentenced to probation at the Residential Corrections Facility (RCF) in Davenport—a community-based correctional facility. Cook was charged with escape from custody after fleeing from the facility on November 25, 2016. In its order and ruling entered following an April 10, 2017 bench trial, the district court summarized the facts:

> Murphy Simms testified he was a Residential Officer at the RCF on Friday, November 25, 2016. Part of his duty was to log in and log out residents who come and go on passes. In the evening of November 25, 2016, Cook returned from an approved [Alcoholics Anonymous] meeting. When Cook checked in, Simms directed him to provide a urine sample which tested positive for opioids. Simms directed Cook to sit in the dining room while he contacted a supervisor to determine what to do about the failed drug test. State's Exhibit 1 is a video from inside the RCF on the night in question. This video shows [Cook] seated at a table in the dining room near the Residential Officer kiosk which is near the front door. The video shows Cook get up from the table where he was directed to sit and walk out of the dining room into the courtyard. Cook can be seen breaking into a jog as he continues out of the courtyard into the

---

[1] Section 719.4(3) provides, "A person who has been committed to . . . a community-based correctional facility, . . . who knowingly and voluntarily is absent from a place where the person is required to be, commits a serious misdemeanor."

[2] *See* Iowa Code § 124.407.

fenced smoking area at the rear of the RCF. Here, Cook can be seen jogging to the rear gate, opening same and then running at full tilt away from the RCF. . . .

Simms stated that Cook violated Rule 4 of the RCF when he left the dining area, that rule being that he disobeyed a lawful order. . . . [The manager of the RCF, Kevin] Rommel testified the front door and rear gates must be unlocked at all times per the fire code. However, residents are never allowed to arrive or depart the RCF except through the front door. The only exceptions to this rule are that a resident may leave through the back gate to take trash to the dumpster in the alley and immediately return, but only [if] they are part of the pre-approved cleaning crew. Cook has been a part of the cleaning crew in the past. Residents may also leave through the back gate in the company of the RCF manager if they are requested to assist the manager in carrying groceries from a nearby grocery store. Other than these two exceptions, residents are never allowed to arrive to the center or depart therefrom except through the front door.

In order to find Cook guilty of escape from custody, the State must establish he "intentionally depart[ed] without authority from a detention facility or institution to which [he] has been committed . . . whether the departure is accomplished through 'stealth, guile, or violence.'" *State v. Burtlow*, 299 N.W.2d 665, 669 (Iowa 1980) (citation omitted). As opposed to absence from custody, escape from custody is "intended to apply [to] unauthorized departures from physical restraint." *Id.* This is because "[i]n those cases a danger of injury to persons or property exists." *Id.* However, physical restraint does not require "actual physical *contact* with the arrestee. Instead, 'physical restraint,' . . . is necessarily involved whenever an individual either is or *would be* subjected to immediate physical restraint if an attempt to flee from authorities was made." *State v. Breitbach*, 488 N.W.2d 444, 449 (Iowa 1992).

In a case nearly identical to this matter, this court held that an individual escaped from a facility pursuant to section 719.4(1) when he left the building

through a fire exit that was not locked or equipped with an alarm. *State v. Paarmann*, No. 10-0862, 2013 WL 541631, at *1 (Iowa Ct. App. Feb. 13, 2013). In *Paarmann*, the court stated:

> The question is whether Paarmann's departure from the [Department of Corrections (DOC)] facility subjected him to immediate physical restraint. *See State v. Smith*, 690 N.W.2d 75, 77 (Iowa 2004). The district court was correct in concluding it did; 'the defendant certainly knew or should have known that when permission was required to be absent from the facility, by leaving the facility without permission, he was escaping from it. To accept the defendant's argument would essentially nullify subsection one except in escapes from actual physical contact.' After his unauthorized departure from the work release center on December 30, 2009, the DOC placed Paarmann on 'escape status,' and he was arrested six days later. When he walked out of the fire exit, even in the absence of a guard or an alarm, Paarmann was subject to immediate physical restraint because he had been committed to the DOC facility and did not have permission to be at any other location.

*Paarmann*, 2013 WL 541631, at *2. Here, although the back exit through which Cook left the RCF was not locked or equipped with an alarm, Cook did not have permission to leave the building. Rommel stated Cook was subject to immediate arrest upon leaving the RCF without permission. Simms explained after Cook violated Simms's direct order to remain in the dining room and left the RCF through the back door, he was placed on "escape" status. This matter is not similar to *State v. Oponski-Sims*, No. 13-1784, 2014 WL 3511894, at *4 (Iowa Ct. App. July 16, 2014), as Cook asserts, because the record here clearly explained the rules and security measures of the RCF facility and established Cook was required to obtain permission before leaving the building.

We acknowledge Cook could have been prosecuted for absence from custody under section 719.4(3). *See State v. Miller*, 841 N.W.2d 583, 593 (Iowa 2014) (concluding absence from custody may be a lesser-included offense of

escape from custody under section 719.4(1) because "a person who leaves a correctional facility without authority is necessarily a person who is absent from a place the person is required to be"). However, if a defendant has intentionally left the facility, he may be prosecuted for the greater offense of escape from custody. *Id.* at 591. Here, Cook jogged out the facility and, once out of the facility, sprinted away.

On our review for correction of errors at law, *State v. Thomas*, 847 N.W.2d 438, 442 (Iowa 2014), we find substantial evidence[3] establishing Cook intentionally left the facility without authority, thus supporting Cook's conviction for escape from custody under section 719.4(1). We therefore affirm.

**AFFIRMED.**

---

[3] "Evidence is considered substantial if, when viewed in the light most favorable to the State, it can convince a rational jury that the defendant is guilty beyond a reasonable doubt." *Thomas*, 847 N.W.2d at 442 (citation omitted).