# IN THE COURT OF APPEALS OF IOWA

No. 18-1727
Filed November 6, 2019

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**JAEVON TRAMERE HOLMES,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda M. Fangman, Judge.

A defendant challenges his conviction for felony escape.  **AFFIRMED.**

Drew H. Kouris, Council Bluffs, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and May, JJ.

**TABOR, Presiding Judge.**

Jaevon Holmes appeals his conviction for escape under Iowa Code section 719.4(1) (2017). He contends the evidence at his bench trial supported only the lesser offense of absence from custody under Iowa Code section 719.4(3). Because ample evidence backs the district court's determination Holmes intentionally and without permission left the work-release facility where he was held after violating parole on his felony convictions, we affirm.

To convict Holmes of escape under section 719.4(1), the State had the burden to prove these elements:

1. Holmes "had previously been convicted of a felony." *State v. Miller*, 841 N.W.2d 583, 590 (Iowa 2014).
2. Because of that conviction, Holmes had been placed in the custody of a community-based correctional facility in Waterloo. *See id.*
3. Holmes "intentionally left the facility, without the consent or authority of the custodian." *Id.*

In satisfaction of the first and second elements, State offered evidence that in 2015 Holmes was convicted of two felonies: drug possession with intent to deliver and eluding. At first, he went to prison. But he received parole in early November 2016. That status was short-lived. An administrative law judge revoked his parole in mid-December 2016. The revocation order placed him on work release at the Waterloo Residential Correctional Facility.

According to Holmes's parole officer, that placement was "a community-based correctional facility" where he was "required to stay the night every night, report where he was going to be when he left the facility," and engage in "gainful employment." The officer testified Holmes was "still considered to be in prison" while he was at the residential facility.

Less than two months after he arrived at the facility, Holmes engaged in the conduct at issue. Holmes returned to the facility from work at just before 5 p.m. Soon after, he signed back out to go shopping and visit an approved residence. The facility set his curfew at 10 p.m. At 9:35 p.m., Holmes returned with time to spare. But when checking back into the facility, Holmes tested positive for alcohol on a routine Alco-Sensor breath test. Drinking alcohol was a rule violation. Residential officer Admir Babic instructed Holmes to wait in the hearing room for fifteen minutes so Babic could conduct a second test as required by the facility's policy.

Rather than obey that instruction, Holmes walked out the front door without permission. Babic encouraged him to come back inside, but Holmes took off running. Babic then called his supervisor who said to place Holmes on "escape status." According to the parole officer, once the escape was "called into state radio" the Department of Corrections issued a pick-up order for Holmes.

Several months later in December 2017, the county attorney sought an arrest warrant for Holmes on those escape charges. The Waterloo police arrested Holmes on that warrant after a traffic stop in April 2018. The State filed a trial information the next month.

After waiving his right to a jury, Holmes appeared for a bench trial in August 2018. The court found him guilty of escape in violation of section 719.4(1) and imposed an indeterminate five-year prison sentence. Holmes now appeals, raising a claim of ineffective assistance of counsel.[1]

---

[1] We may decide this claim on direct appeal. Our supreme court decided recent amendments to Iowa Code section 814.7 (prohibiting resolution of ineffective-assistance-

On appeal, Holmes argues his trial attorney was ineffective in not arguing to the district court that he "was guilty of nothing more than voluntary absence from a facility." We review his ineffective-assistance-of-counsel claim de novo. *See State v. McNeal*, 897 N.W.2d 697, 703 (Iowa 2017). Holmes has the burden to prove defense counsel breached an essential duty creating actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If his proof is wanting on either element, his overall claim fails. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). On the prejudice prong, Holmes must show his attorney's mistake was "so serious as to deprive [him] of a fair trial." *See id.* (quoting *Strickland*, 466 U.S. at 687).

On the breach-of-duty prong, Holmes acknowledges that in a bench trial, unlike a jury trial, the defense need not move for a judgment of acquittal to preserve error on a sufficiency of the evidence claim. *See State v. Petithory*, 702 N.W.2d 854, 856 (Iowa 2005). But he maintains counsel at some point should have impressed upon the district court that the facts satisfied "nothing more than voluntary absence from a facility."

Even if counsel should have more vigorously argued that position, Holmes cannot show prejudice. *See State v. Albright*, 925 N.W.2d 144, 152 (Iowa 2019) (explaining if record contains sufficient evidence proving offense, counsel's failure to raise the claim was not prejudicial). Here, the State presented sufficient

---

of-counsel claims on direct appeal) apply only prospectively and do not apply to cases, like this one, pending on July 1, 2019. *See State v. Macke*, 933 N.W.2d 226, 228 (Iowa 2019).

evidence of escape—defined as "departure without authority from a detention facility or institution." *See Miller*, 841 N.W.2d at 592.[2]

Granted, the difference between escape and absence from custody is not clear-cut in our criminal code. *See id.* at 600 (Zager, J., specially concurring) (noting legislature could define absence from custody as separate and distinct crime). The murkiness is apparent from a comparison of their elements.

| The felony escape statute provides, in pertinent part: | The absence-from-custody provision provides, in pertinent part: |
| --- | --- |
| A person convicted of a felony . . . who intentionally escapes . . . from a detention facility, community-based correctional facility, or institution to which the person has been committed by reason of the conviction . . . commits a class "D" felony. | A person who has been committed to an institution under the control of the Iowa department of corrections, to a community-based correctional facility . . . who knowingly and voluntarily is absent from a place where the person is required to be, commits a serious misdemeanor. |
| Iowa Code § 719.4(1). | Iowa Code § 719.4(3). |

In *State v. Burtlow* 299 N.W.2d 665, 669 (Iowa 1980), our supreme court discussed the difference between these two subsections:

> Subsection one . . . obviously applies when a person convicted or charged with a felony intentionally departs without authority from a detention facility or institution to which the person has been committed on the conviction or charge. This is true whether the departure is accomplished through "stealth, guile or violence." Subsection three . . . obviously applies when a prisoner is absent without authority from a place he is required to be, even if he has not left the premises of the institution or detention facility.

(Citations omitted.) Burtlow's failure to return to a work-release center after a week-long furlough fell within subsection three. *See Burtlow,* 299 N.W.2d at 669.

---

[2] In the robbery context, "escape" means "to get away (as by flight or conscious effort)." *State v. Terry*, 544 N.W.2d 449, 452 (Iowa 1996) (Citation omitted).

The *Burtlow* court opined subsection one aimed to punish "unauthorized departures from physical restraint" when a "danger of injury to persons or property exists." *See id.* A dozen years later, in *State v. Breitbach*, the court clarified that "physical restraint" did not mean "actual physical *contact*" but the potential for that contact if a person tried to flee from authorities. 488 N.W.2d 444, 449 (Iowa 1992).

In this appeal, Holmes asserts officials at the residential facility did not fear he would injure persons or destroy property as a result of leaving the facility because he fled in February 2017 and no warrant issued for his arrest until December 2017. But that is not the test. *Breitbach* emphasized the State did not have to show a defendant's unauthorized departure led to a "danger of injury to persons or property" to prove a violation of subsection one. *See id.*

Holmes also contends his case is "identical" to the situation in *State v. Oponski-Sims.* No. 13-1784, 2014 WL 3511894 (Iowa Ct. App. July 16, 2014). The similarities are exaggerated. In that appeal from a guilty plea, we remanded to allow the State to supplement the record to establish whether Oponski-Sims was "subject to immediate physical restraint at the time he left the Fort Des Moines facility." *Id.* at *4.

By contrast, this record shows Holmes ran away from the work-release facility when residential officer Babic ordered him to go back inside. *See State v. Horstman*, 218 N.W.2d 604, 605 (Iowa 1974) (holding "unauthorized departure" was "gravamen" of escape offense). Although the doors were not locked, the Waterloo facility required residents to "fill out a furlough form" every time they left. By leaving the facility without authorization—and, in fact, in contradiction of a direct order to wait inside—Holmes violated section 719.4(1). *See State v. Cook*, No.

17-1039, 2018 WL 2084821, at *2 (Iowa Ct. App. May 2, 2018) (upholding escape conviction when Cook violated direct order to remain in the dining room and left the residential facility through the back door); *State v. Paarmann*, No.10-0862,2013 WL 541631, at *1 (Iowa Ct. App. Feb.13, 2013) (upholding escape conviction when Paarmann walked out of work-release facility's fire exit that had no alarm or guard and was placed on "escape" status for six days before his arrest).

Given these interpretations of section 719.49(1) and the facts presented at trial, Holmes cannot show prejudice from counsel's performance.

**AFFIRMED.**