# IN THE COURT OF APPEALS OF IOWA

No. 14-1283
Filed December 21, 2016

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**NAPOLEON MBONYUNKIZA,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Karen A. Romano,

Judge.

        Napolean Mbonyunkiza appeals following his guilty pleas to sexual abuse

in the third degree, neglect of a dependent person, dependent adult abuse, and

failure to appear.  **AFFIRMED.**

        Angela L. Campbell of Dickey & Campbell Law Firm, P.L.C., Des Moines,

for appellant.

        Thomas J. Miller, Attorney General, and Darrel L. Mullins, Assistant

Attorney General, for appellee.

        Considered by Vaitheswaran, P.J., McDonald, J., and Mahan, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2015).

**MAHAN, Senior Judge.**

Napolean Mbonyunkiza appeals following his guilty pleas to sexual abuse in the third degree, neglect of a dependent person, dependent adult abuse, and failure to appear. Mbonyunkiza contends (1) the district court erred in finding him competent to stand trial; (2) his trial counsel was ineffective in failing to challenge his plea as unknowing, involuntary, and uninformed, or without a factual basis; (3) his sentences violate double jeopardy and the merger rule; and (4) the district court abused its discretion in sentencing him. We affirm.

## I.    *Background Facts and Proceedings*

D.B., a mentally and physically incapacitated woman living at a Des Moines-area group home, was treated at Mercy Hospital for weight loss, gagging, and digestive issues. It was discovered D.B. was twenty weeks pregnant. The pregnancy was terminated per the direction of D.B.'s guardian. Police sought DNA samples of all males with access to D.B., including Mbonyunkiza, a caretaker for D.B. at the group home. While paternity testing could exclude 99.9% of the male population, it could not exclude Mbonyunkiza as the fetus' father.

In July 2010, the State filed a trial information (FECR237656) charging Mbonyunkiza with sexual abuse in the third degree, neglect of a dependent person, and dependent adult abuse. Mbonyunkiza was arrested, a preliminary hearing was scheduled, and he was released. After Mbonyunkiza failed to appear for his preliminary hearing, police discovered he had fled to Uganda. The State then filed a trial information (FECR238083) charging Mbonyunkiza with failure to appear.

Mbonyunkiza subsequently returned to the United States and was taken into custody to face the pending charges. The issue of competency was raised by defense counsel, and the district court ordered Mbonyunkiza to be evaluated by Dr. Tracy Thomas. The State moved for a separate evaluation, and the court ordered Mbonyunkiza to be evaluated by Dr. James Dennert. Both experts opined Mbonyunkiza was competent to stand trial. Following a competency hearing, the court concluded Mbonyunkiza was competent to stand trial.

Mbonyunkiza subsequently pled guilty as charged to each count. Mbonyunkiza's attorney informed the court Mbonyunkiza intended to argue for a favorable sentence. The court accepted Mbonyunkiza's pleas and sentenced him to the maximum terms of imprisonment—ten years on two counts and five years on two counts—to run consecutively, for a total of thirty years.

Mbonyunkiza appeals. Additional facts will be set forth below as relevant to the issues raised on appeal.

## II.    Competency

Mbonyunkiza challenges the district court's finding that he was competent to stand trial. Mbonyunkiza contends his alleged incompetence to stand trial implicates his due process rights. "[T]he constitutional basis of a claim the defendant is not competent to be tried requires a de novo review on appeal." *See State v. Johnson*, 784 N.W.2d 192, 194 (Iowa 2010).

Competency to stand trial is governed by Iowa Code section 812.3 (2015), which provides:

> If at any stage of a criminal proceeding the defendant or the defendant's attorney, upon application to the court, alleges specific facts showing that the defendant is suffering from a mental disorder

which prevents the defendant from appreciating the charge, understanding the proceedings, or assisting effectively in the defense, the court shall suspend further proceedings and determine if probable cause exists to sustain the allegations. The applicant has the burden of establishing probable cause.

"We presume a defendant is competent to stand trial. The defendant has the burden of proving his or her incompetency to stand trial by a preponderance of the evidence. If the evidence is in equipoise, the presumption of competency prevails." *Id.* at 194 (citation omitted).

In September 2013, defense counsel and Mbonyunkiza requested a competency evaluation pursuant to section 812.3. Defense counsel became concerned about Mbonyunkiza's competence after discussions with Mbonyunkiza. Mbonyunkiza reported he heard voices, someone cast "spells" on him, and "sorcery" caused him to do bad things. Mbonyunkiza related that he grew up in Rwanda, where he witnessed brutal murders of his family members. He had been treated for posttraumatic stress and depression.

The district court granted the request for a competency evaluation. The defense's evaluator, Dr. Tracy Thomas, submitted an initial report in October 2013, stating "a definitive opinion [as to Mbonyunkiza's competence] could not be made due to lack of information." During that hearing, the State requested a second evaluation, and the court granted the request.

The State's evaluator, Dr. James Dennert, conducted an interview of Mbonyunkiza and reviewed the trial information, minutes of testimony, and Dr. Thomas' October 2013 report. Dr. Dennert's December 16, 2013 evaluation opined:

On the basis of the information provided to me, and my interview of Mr. Mbonyunkiza, it is my medical opinion that he does not suffer a mental illness that renders him incompetent to stand trial. Specifically, he does not suffer a mental illness that prevents him from understanding the charges against him, or that prevents him from being able to understand the court proceedings, or that prevents him from assisting his attorney in his defense.

While Mr. Mbonyunkiza said that he did not know or understand the charges against him, he seemed to understand quite well when I told him, in general, what he was accused of. He denied that he had done what he is charged with, and maintained his denial throughout our interview. He also indicated that he was trying to learn about how trials work, and that the major impediment to his current understanding is his poor English. He even said that, if he could have the trial explained to him in French that this would help "absolutely."

Mr. Mbonyunkiza's claimed lack of memory for his trip to Uganda and subsequent return to the United States is not consistent with any known psychiatric or neurological syndrome. He is able to provide very good history for other aspects of his life. It is my opinion that Mr. Mbonyunkiza does, in fact, recall going to Uganda, but that he is falsely claiming not to recall. His lack of memory is clearly self-serving.

It is also my opinion that Mr. Mbonyunkiza's reports of hearing "voices" are self-serving as well. During my interview, he at no time appeared to be attending to inner stimuli. I am unaware of any reports of his behavior while in jail that would suggest psychotic symptoms. I am unaware of any history of psychosis in Mr. Mbonyunkiza; his reported treatment in Rwanda and Uganda appear to be for depression, or possibly posttraumatic stress, but not psychosis.

Mr. Mbonyunkiza does report current symptoms of a depressive nature. He complains of sleep problems, appetite disturbance, and decreased energy. He was also tearful at times during our interview. These symptoms are not surprising in someone jailed for the crimes that Mr. Mbonyunkiza is accused of committing. Taken together, they are consistent with a diagnosis of Adjustment Disorder with Depressed Mood.

On the basis of all the information provided to me and my interview with Mr. Mbonyunkiza, it is my medical opinion that he is competent to stand trial. He does not suffer any psychiatric or mental illness that renders him incompetent. The only potential obstacle to his participation in his trial is language, and that can be addressed by providing him with a French interpreter, who could explain the charges, the basic workings of the court system, and provide ongoing interpretation during trial.

After Dr. Dennert's report was submitted—and after conducting another interview of Mbonyunkiza and reviewing additional materials—Dr. Thomas submitted an "update[d]" report opining Mbonyunkiza was competent to stand trial. Dr. Thomas' January 17, 2014 evaluation opined:

> Based on the information available to this evaluator and on the two interviews conducted with the defendant, this evaluator was not able to find conclusive evidence of a mental disorder that would preclude the defendant from appreciating his charges, understanding the proceedings against him, or assisting in his defense. Although he reported at first interview a history of mental health problems, his report of those issues has not been consistent and available records do not show that he has ever been observed to have a major mental illness that would be expected to impact competence. Further, his presentation during interviews with this evaluator was not consistent with a major mental illness, such as a bipolar disorder or a psychotic disorder. Mr. Mbonyunkiza may have [posttraumatic stress disorder] PTSD from experiences in Africa and may have an Adjustment Disorder related to his current situation. However, these conditions would not typically be expected to impact an individual's competence to proceed.
>
> The fact that the defendant does not present with a requisite mental disorder makes further analysis of his competence-related abilities moot; however, this evaluator would like to briefly comment on the issue of psycho-legal abilities. Mr. Mbooyunkiza does report a fairly significant lack of understanding of his charges, the legal process, and the role of his attorney. It is this evaluator's opinion that those deficits are a product of cultural and language issues. It is also possible that the defendant is magnifying his lack of knowledge due to fear regarding his charges and the impending legal process. He is likely to need some education on the legal system and will likely require the continued use of an interpreter.
>
> Taken together, it is this evaluator's opinion the defendant is competent to proceed with his current charges.

The experts' reports were introduced at a second hearing, where the district court ruled: "The court has had an opportunity to review all of the evaluations that have been presented. The court finds based upon those evaluations and the expert opinions that the defendant in this matter is competent to stand trial."

On appeal, Mbonyunkiza points to Dr. Thomas' initial report as "the first professional indication[] . . . that it was possible [he] was incompetent." But Mbonyunkiza ignores the fact that Dr. Thomas subsequently updated the initial report to reach an opinion Mbonyunkiza was competent to stand trial stating, "Since the time of the October 2013 report, this evaluator was able to review additional information and re-interview the defendant making possible the formation of an opinion regarding competence." Moreover, by the time of Dr. Thomas' updated evaluation, Dr. Thomas had conducted two interviews with Mbonyunkiza and reviewed Mbonyunkiza's medical and jail records.

Mbonyunkiza further claims, "The exhibits demonstrated that there was a language barrier, as well as serious concerns about Mbonyunkiza's mental health." According to Mbonyunkiza, "A general theme came through the written materials, and the statements made by Mbonyunkiza on the record—that he was suffering from voices, that he was suffering from the effects of genocide, and he believed he was under a voodoo spell from a witch."

In addition to reviewing the experts' reports, the district court had the opportunity to observe Mbonyunkiza at several hearings before making a determination of his competence. Although Mbonyunkiza did not testify, the court was able to view Mbonyunkiza's demeanor, as well as his ability to ask and answer questions and interact with counsel. Upon our de novo review of the record, we conclude Mbonyunkiza failed to prove by a preponderance of the evidence that he was not competent to stand trial. Accordingly, we affirm the decision of the district court on this issue.

### III.     *Ineffective Assistance of Counsel*

Mbonyunkiza contends his trial counsel was ineffective in failing to challenge his plea where (A) there was no factual basis to support his conviction for dependent adult abuse; (B) the plea was not intelligent, knowing, or voluntary due to his lack of competence; and (C) there was no plea agreement.[1]  To succeed on these ineffective-assistance-of-counsel claims, Mbonyunkiza must show (1) the breach of an essential duty and (2) prejudice.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "If we conclude a claimant has failed to establish either of these elements, we need not address the remaining element." *Dempsey v. State*, 860 N.W.2d 860, 868 (Iowa 2015).

### A.     *Factual Basis–Dependent Adult Abuse*

A guilty plea may not be accepted by a court without the court first determining the plea has a factual basis.  Iowa R. Crim. P. 2.8(2)(b).  If there is no factual basis to support a defendant's guilty plea and the defendant's counsel permits the defendant "to plead guilty and waive his right to file a motion in arrest of judgment" anyway, that counselor renders the defendant ineffective assistance.  *See State v. Ortiz*, 789 N.W.2d 761, 764-65 (Iowa 2010) (stating "counsel violates an essential duty" and "[p]rejudice is presumed under these circumstances").  To succeed on the essential-duty prong, Mbonyunkiza must

---

[1] Generally, a defendant's failure to file a motion in arrest of judgment bars a direct appeal of the conviction.  Iowa R. Crim. P. 2.24(3)(a).  But this failure does not bar a challenge to a guilty plea if the failure to file a motion in arrest of judgment resulted from ineffective assistance of counsel.  *State v. Rodriguez*, 804 N.W.2d 844, 848 (Iowa 2011). We therefore proceed to the merits of Mbonyunkiza's ineffective-assistance-of-counsel claims.

demonstrate the record lacks a factual basis to support his guilty plea to dependent adult abuse. *See id.* at 765.

Mbonyunkiza pled guilty to dependent adult abuse causing physical injury, in violation of Iowa Code sections 235B.2(5)(a)(1)(b) and 235B.20(4). "'Dependent adult abuse' means . . . [a]ny of the following as a result of the willful or negligent acts or omissions of a caretaker: . . . [t]he commission of a sexual offense . . . with or against a dependent adult." Iowa Code § 235B.2(5)(a)(1)(b). "A caretaker who intentionally commits dependent adult abuse on a dependent adult in violation of this chapter is guilty of a class 'C' felony if the intentional dependent adult abuse *results in physical injury*." *Id.* § 235B.20(4) (emphasis added).

Mbonyunkiza challenges the "physical injury" element of the offense. Specifically, he claims D.B.'s pregnancy and related sickness from the pregnancy was not a "physical injury," and the court "should not read pregnancy into a definition of 'physical injury' without clear language from the legislature that pregnancy is considered a 'physical injury.'" Mbonyunkiza relies on *United States v. Yankton*, 986 F.2d 1225, 1229-30 (8th Cir. 1993), where the court concluded pregnancy resulting from rape did not constitute a "serious bodily injury." But as the State points out, the court in *Yankton* was interpreting sentencing guidelines, which allowed for an elevated offense level for "permanent or life-threatening injury" or "serious bodily injury," not physical injury. *See Yankton*, 986 F.2d at 1229. Indeed, Mbonyunkiza pled guilty to dependent adult abuse resulting physical injury—not resulting in *serious injury*. *Compare* Iowa Code § 235B.20(2) (defining dependent adult abuse resulting in serious

injury), *with id.* § 235B.20(4) (defining dependent adult abuse resulting in physical injury); *see also id.* §§ 235B.2(13) ("'Serious injury' means the same as defined in section 702.18."); 702.18 (defining "serious injury"). The State counters, "A better, common-sense view holds that pregnancy resulting from rape meets not only the lower threshold of 'physical injury' but definitions of 'great bodily injury.'"

We need not reach the question of whether pregnancy should be considered a physical injury per se. The parties acknowledge "physical injury" is not defined in the Iowa Code. According to *Black's Law Dictionary*, "bodily injury"—also termed "physical injury"—is defined as "physical damage to a person's body." *Black's Law Dictionary* 789 (7th ed. 1999).

Here, the record shows D.B. was a "wheel chair bound" woman "unable to speak works or write" and "suffer[ing] from physical incapacitation as well as a mental defect or incapacity." While caring for D.B. as part of his employment duties at the group home where D.B. resided, Mbonyunkiza forcibly sexually assaulted D.B. The Iowa Supreme Court has "recognize[d] that forcible sexual abuse will frequently cause pain or other injury. It has been held, for example, that forcible rape is bodily injury as a matter of law." *State v. McKee*, 312 N.W.2d 907, 914 (Iowa 1981) (citation omitted). In addition to the act of sexual assault itself, Mbonyunkiza's assault caused D.B. to become pregnant and hospitalized for weight loss, gagging, and digestive problems; D.B.'s pregnancy culminated in an abortion at twenty-weeks' gestation. The record supports a finding of a physical injury. Accordingly, we conclude the minutes provide a factual basis for

Mbonyunkiza's plea, and trial counsel was not ineffective for permitting him to plead guilty.

**B.     *Unknowing*, *Involuntary*, *Uninformed Plea***

Mbonyunkiza next contends his counsel was ineffective in failing to challenge his "clear incompetency" and allowing him to plead guilty. Mbonyunkiza points to statements he made during the hearings that showed "issues with [his] ability to understand the guilty plea he was entering."

At the outset of the plea hearing, trial counsel stated:

> I set these two cases for guilty pleas. That was done at the request of my client. He informed me that he wishes to plead guilty to these charges and have this matter set down for sentencing. And at the time of sentencing, we intend to argue for a favorable disposition for this defendant.

But prior to the plea colloquy, Mbonyunkiza told the court, "[W]hat I want is with complete awareness of the mental illness that I have that is bothering me so much." He stated, "[B]efore making a decision, in order to make a decision, [I] ask for more time because I'm taking these medications and I was for my mental health to be quite okay so that it would be adequate for making this kind of decision." Mbonyunkiza further stated he did not understand "a lot of things" the court had talked about. The court responded, "It appears to me you've understood all of my questions," and reminded Mbonyunkiza, "Sir, you have undergone a competency evaluation during the pendency of this case and you have been found competent to stand trial."

Defense counsel then explained her investigation of possible defenses on Mbonyunkiza's behalf:

> So what I did was discuss this case with this defendant as well as an expert that I consulted with regarding the defenses such as diminished responsibility, diminished capacity, any mental health defenses.
>
> I also obtained medical records regarding this defendant and it provided some history. The information I obtained from my various sources, in my opinion, would not be able to support a diminished responsibility, diminished capacity or any such mental health defenses that would have been—that this defendant would have been suffering from at the time the alleged offenses occurred.

The court observed defense counsel was "capable and competent" in her investigation of Mbonyunkiza's mental health and possible defenses.

After more discussion by Mbonyunkiza with regard to his mental health, the court asked Mbonyunkiza if he wanted to enter a plea or whether he wanted the matter set for trial. Mbonyunkiza stated, "I would first like to discuss that with my lawyer to make a decision." The court allowed Mbonyunkiza twenty minutes in private with counsel. When the hearing resumed, the court asked Mbonyunkiza, "Do you wish to enter a plea of guilty today or do you want me to confirm this for trial?" to which Mbonyunkiza answered, "I understand. Yes. I want to take—I want to plead guilty today."

On our de novo review, we cannot find counsel was ineffective in failing to challenge Mbonyunkiza's plea as unknowing, involuntary, or uninformed. We further observe trial counsel was the one who raised the issue of competence initially, and she requested a competency evaluation. As noted above, the experts agreed Mbonyunkiza was competent to stand trial. Moreover, in the plea context, the prejudice element requires proof of a reasonable probability that, but for counsel's errors, the defendant would not have pled guilty and would have insisted on going to trial. *State v. Straw*, 709 N.W.2d 128, 138 (Iowa 2006). On

our de novo review, we are convinced Mbonyunkiza cannot establish either element of his claim. We affirm on this issue.

### C. Plea Agreement

Mbonyunkiza contends his counsel was ineffective in allowing him to plead guilty without a plea agreement. Mbonyunkiza cites no authority for this assertion, only a generalized claim that he received "no benefit whatsoever" to pleading guilty. It is apparent from the record Mbonyunkiza decided to plead guilty and "argue for a favorable" sentence. At the outset of the plea hearing, the State acknowledged, "[I]t's my understanding that the defendant will plead to all of these charges. There is not a plea agreement so the parties will be free to argue any disposition."

Mbonyunkiza's decision to plead guilty could be considered both strategic and logical. The evidence against him was overwhelming. By "accept[ing] responsibility" for his actions, Mbonyunkiza was able to express remorse to the court, describe his "mental illness" as the reason he made a "poor decision," and ask the court to consider his act "a single incident" for sentencing purposes. Trial counsel was not ineffective in allowing Mbonyunkiza to plead guilty under these circumstances. We affirm on this issue.

## IV. Double Jeopardy and Merger

Mbonyunkiza contends he "was accused of having sex one time with one victim who was mentally incapable of giving consent," and "he was charged with sex abuse in the third degree, neglect of a dependent person and dependent

adult abuse, and given consecutive sentences."[2]   According to Mbonyunkiza, "This violated [his] rights under Iowa statutory law for a violation of the merger rule in Iowa Rule of Criminal Procedure 2.6(1), and the double jeopardy clause of the Fifth Amendment to the United States Constitution."

Our review of a double-jeopardy claim is de novo, due to its constitutional nature.   *State v. Lindell*, 828 N.W.2d 1, 4 (Iowa 2013).   To the extent Mbonyunkiza claims his sentence was illegal because the court failed to merge the three offenses (in accordance with Iowa Code section 701.9), our review is at law.  *See State v. Perez*, 563 N.W.2d 625, 627 (Iowa 1997); *see also* Iowa Code § 701.9 ("No person shall be convicted of a public offense which is necessarily included in another public offense of which the person is convicted.  If the jury returns a verdict of guilty of more than one offense and such verdict conflicts with this section, the court shall enter judgment of guilty of the greater of the offenses only."); Iowa R. Crim. P. 2.6(2) ("Upon prosecution for a public offense, the defendant may be convicted of either the public offense charged or an included offense, but not both.").

The Double Jeopardy Clause of the United States Constitution states that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."   U.S. Const. amend. V.   The clause "protects against successive

---

[2] The State challenges Mbonyunkiza's error preservation, noting, "Parties cannot 'predicate error upon the court's doing the very thing they requested the court to do.'" *State v. Means*, No. 14-1376, 2015 WL 6509741, at *9 (Iowa Ct. App. Oct. 28, 2015) (citation omitted).  But here, at sentencing, trial counsel requested the court "to run the counts in . . . the sex abuse case . . . concurrent" due to the "single nature of this incident."  Trial counsel acknowledged "it makes sense" to run the sentence for failure to appear consecutive because "that's a separate charge, separate incident."  We therefore disagree with the State's contention Mbonyunkiza is now challenging the court's action in doing what he requested the court do.

prosecutions after acquittal or conviction; and, pertinent to this appeal, it protects against multiple punishments for the same offense." *Perez*, 563 N.W.2d at 627. The prohibition is based on principles of finality and the prevention of prosecutorial overreaching. *State v. Butler*, 505 N.W.2d 806, 807 (Iowa 1993).

Where multiple punishments are imposed pursuant to a single prosecution, however, application of the Double Jeopardy Clause is limited. The reason is that the multiple-punishment proscription "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Accordingly, "the question of what punishments are constitutionally permissible is no different from the question of what punishments the legislature intended to be imposed." *State v. McKettrick*, 480 N.W.2d 52, 57 (Iowa 1992).

The question before us is whether Mbonyunkiza, found to have committed the single act of sexual assault on D.B., can be sentenced for convictions of sexual abuse in the third degree,[3] neglect of a dependent person,[4] *and*

---

[3] Relevant to Mbonyunkiza's plea on this charge, Iowa Code section 709.1 provides:

> Any sex act between persons is sexual abuse by either of the persons when the act is performed with the other person in any of the following circumstances:
> . . . .
> 2. Such other person is suffering from a mental defect or incapacity which precludes giving consent, or lacks the mental capacity to know the right and wrong of conduct in sexual matters.

With regard to the factual basis for the degree of the charge to which Mbonyunkiza pled, "[a] person commits sexual abuse in the third degree when the person performs a sex act [and t]he act is between persons who are not at the time cohabiting as husband and wife and [t]he other person is suffering from a mental defect or incapacity which precludes giving consent." Iowa Code § 709.4(1)(b)(2).

[4] The crime of neglect of a dependent person is defined as follows:

> A person . . . having custody of a . . . person who by reason of mental or physical disability is not able to care for the person's self, who knowingly or recklessly exposes such person to a hazard or danger

dependent adult abuse.[5]  In the absence of clear legislative intent to intend cumulative punishment, we turn to the rule of statutory construction articulated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932).  Namely, "'where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not.'"  *Butler*, 505 N.W.2d at 807 (quoting *Blockburger*, 284 U.S. at 304).  "If one crime is a lesser included offense of the other crime, the offenses are the 'same' and cumulative punishments cannot be imposed."  *State v. Taylor*, 596 N.W.2d 55, 57 (Iowa 1999).

> But if one offense is not included within the other, there is a presumption that multiple punishments can be assessed.  The lesser included offense is necessarily included in the greater offense if it is impossible to commit the greater offense without also committing the lesser offense.  If the lesser offense includes an element that is not required for the greater offense, the lesser is not included in the greater.

---

against which such person cannot reasonably be expected to protect such person's self . . . , knowing or having reason to believe that the person will be exposed to such hazard or danger, commits a class "C" felony.

Iowa Code § 726.3.

[5] The crime of dependent adult abuse is defined as: "Any of the following as a result of the willful or negligent acts or omissions of a caretaker: . . . .  The commission of a sexual offense under chapter 709 or section 726.2 with or against a dependent adult." Iowa Code § 235B.2(5)(a)(1)(b).  "Caretaker" is defined as "a related or nonrelated person who has the responsibility for the protection, care, or custody of a dependent adult as a result of assuming the responsibility voluntarily, by contract, through employment, or by order of the court." *Id.* § 235B.2(1).  "Dependent adult" is defined as "a person eighteen years of age or older who is unable to protect the person's own interests or unable to adequately perform or obtain services necessary to meet essential human needs, as a result of a physical or mental condition which requires assistance from another, or as defined by departmental rule." *Id.* § 235B.2(4).  Section 235B.20(4) further provides: "A caretaker who intentionally commits dependent adult abuse on a dependent adult in violation of this chapter is guilty of a class 'C' felony if the intentional dependent adult abuse results in physical injury."

*Id.* (citations omitted); *see also State v. Miller*, 841 N.W.2d 583, 587-88 (Iowa 2014) ("The test we have settled on to determine whether a crime is a lesser included offense of a greater crime generally inquires 'whether the greater offense cannot be committed without also committing all elements of the lesser offense.'" (citation omitted)).

Mbonyunkiza contends sexual abuse in the third degree is a lesser-included offense of neglect of a dependent person and dependent adult abuse. Because it is possible to commit neglect of a dependent person without committing sexual abuse in the third degree and to commit dependent adult abuse without committing sexual abuse in the third degree, Mbonyunkiza's challenge fails. For instance, it is possible to commit neglect of a dependent person without committing the other two offenses if the perpetrator is the victim's husband and the victim is under eighteen years of age or does not suffer an injury. It is possible to commit dependent adult abuse but not the other two offenses if the perpetrator is married to the adult victim but while she has the capacity to consent to sex she cannot perform certain physical or financial tasks for herself. Because it is possible to commit one offense without committing the other, Mbonyunkiza's challenge fails.

## V. Sentencing

Mbonyunkiza also challenges the district court's imposition of "the maximum possible sentence of 30 years in prison." Specifically, Mbonyunkiza claims because three of the four counts were "all for one act," the court should have imposed concurrent sentences for those counts rather than consecutive

sentences. Our review is for an abuse of discretion. *State v. Thompson*, 856 N.W.2d 915, 918 (Iowa 2014).

We have already concluded in our analysis of Mbonyunkiza's double jeopardy and merger claims that there were separate offenses. Imposing consecutive sentences on multiple convictions arising from the same transaction is within the prerogative of the sentencing court. *See State v. Criswell*, 242 N.W.2d 259, 261 (Iowa 1976) ("Iowa statutes allow imposition of consecutive sentences for convictions obtained under the circumstances presented [separate offenses committed in the course of a single transaction]."); *see also Taylor*, 596 N.W.2d at 57 ("The decision to impose consecutive sentences was discretionary."). Here, in sentencing Mbonyunkiza, the district court stated:

> I appreciate your acceptance of responsibility by your pleas of guilty and by the statements you've made. But with responsibility comes accountability, and we are accountable for our actions. The problems afflicting you are serious. I understand that from what you've said and the presentence investigation report, but I believe the problems that you suffer from and afflictions that you may have can best be treated in an atmosphere that allows for the maximum protection of the public from further criminal activity by you.
>
> The offenses of sex abuse in the third degree, neglect of a dependent person, dependent adult abuse all are horrible offenses. They not only show a massive deviation from proper and decent human behavior, but an utter disregard for a person you are charged with caring for.
>
> This design and devious abuse of a person totally unable to care for herself and a person especially defenseless against the sexual assault perpetrated upon her is particularly heinous.
>
> In addition, your voluntary absence and flight from this jurisdiction illustrates your contempt for the law. Your actions taken together with all of the factors the Court must consider by law lends itself to the conclusion that society deserves and expects protection from you for as long as possible to allow necessary steps, if you are willing, for your treatment for whatever you are suffering from or what afflictions you have.
>
> You, as much as anyone, have observed and endured first-hand terrible cruelty that can come from the hands of humans.

You, more than anyone, should appreciate the pain and suffering not only the victims of such cruelty or such abuse and heinous crimes, but also what happens to those who are the loved ones who are left to weep and suffer and mourn.

You came to the United States to seek asylum and enjoy the freedoms and protection of our laws, our people and the government of the people. And even though this was all provided to you, the acts you have committed have caused that freedom now to be limited, soon to be taken away.

Mbonyunkiza again requested the court order his sentences to run concurrent, to which the court responded:

The Court has considered the request made by the defendant and defendant's counsel. The request is hereby denied. For the reasons as previously stated, the Court finds, again, these crimes are so horrible and heinous as to require protection of the public, and the Court intends to do just that.

. . . .

The Court, again, has considered all the circumstances and all the factors involved. Particularly aggravating is the fact that this offense was committed upon a person who was totally defenseless, totally unable to give consent, let alone to fend off the actions of the defendant, and that this defendant, as you stated, came to the United States to seek asylum, to seek a new life for himself, to seek freedom, to be protected from the genocide he escaped from and yet decided, for whatever reason, to commit this heinous offense—offenses.

I can't think of another case or set of circumstances that could require the sentence imposed as I have done so than this.

We discern no abuse of discretion in the district court's statement of reasons and imposition of consecutive sentences. We affirm Mbonyunkiza's convictions and sentences for sexual abuse in the third degree, neglect of a dependent person, dependent adult abuse, and failure to appear.

**AFFIRMED.**